

# PAVAN PARIKH
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

```
ELECTRONICALLY FILED
August 8, 2022 02:08 PM
      PAVAN PARIKH
    Clerk of Courts
  Hamilton County, Ohio
  CONFIRMATION 1218981
```

| | |
|---|---|
| **LISA BROWN** | **A 2202870** |
| vs. | |
| **BOB EVANS RESTAURANTS LLC** | |

## FILING TYPE: INITIAL FILING (IN COUNTY) WITH JURY DEMAND

## PAGES FILED: 14

EFR200

# IN THE COURT OF COMMON PLEAS
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| LISA BROWN<br>4341 Brookdale Drive<br>Cincinnati, OH 45211<br><br>Plaintiff,<br><br>v.<br><br>BOB EVANS RESTAURANTS, LLC<br>6318 Glenway Avenue<br>Cincinnati, OH 45211<br><br>**Serve Also:**<br>BOB EVANS RESTAURANTS, LLC<br>c/o CT Corp. System<br>Statutory Agent<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219<br><br>**-and-**<br><br>JERRY ABRAMS<br>c/o Bob Evans Restaurants, LLC<br>6318 Glenway Avenue<br>Cincinnati, OH 45211<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE:<br><br><br><br>**COMPLAINT FOR DAMAGES<br>AND INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED<br>HEREIN** |

Plaintiff, Lisa Brown, by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

## PARTIES

1. Brown is a resident of the city of Cincinnati, Hamilton County, Ohio.

2. Defendant BOB EVANS RESTAURANTS, LLC., ("Bob Evans") is a foreign limited liability company that conducts business within the state of Ohio. The relevant location of the events and omissions of this Complaint took place was 6318 Glenway Avenue, Cincinnati, OH 45211.

3. Upon information and belief, Defendant Jerry Abrams is a resident of Ohio.

4. Bob Evans is, and was at all times hereinafter mentioned, Brown's employer within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C §2000e, the Americans with Disability Act ("ADA") 42 U.S.C. §12101, the Age Discrimination in Employment Act of 1967 ("ADEA") 29 U.S. Code § 634, the Family and Medical Leave Act ("FMLA") 29 U.S.C. §2617 et seq., R.C. § 4101 et seq, and R.C. § 4112 et seq.

5. Within 300 days of the adverse employment actions described herein, Brown filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2022-00899 ("EEOC Charge").

6. The Charge of Discrimination is currently pending before the EEOC and Brown intends to amend this Complaint to include claims of discrimination and retaliation under Title VII, the ADA, the ADEA, and R.C. § 4112, including claims against both Defendants Bob Evans and Jerry Abrams.

7. Brown is in the process of exhausting all administrative remedies pursuant to 29 C.R.F. § 1614.407(b).

**JURISDICTION & VENUE**

8. All of the material events alleged in this Complaint occurred in or around Hamilton County, Ohio.

9. Therefore, personal jurisdiction is proper over Defendants pursuant to R.C. § 2307.382(A)(1) and/or (3).

10. Venue is proper pursuant to Civ. R. 3(C)(1), (3), and/or (6).

11. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

12. Brown is a former employee of Bob Evans.

13. At all times noted herein, Brown was qualified for her position at Bob Evans.

14. At all times noted herein, Brown could fully perform the essential functions of her job, with or without a reasonable accommodation.

15. Brown worked as a Server and Host at Bob Evans from November 10, 2019, until Spring 2021, and worked again starting July 2021 until Bob Evans unlawfully constructively terminated Brown's employment on or around March 22, 2022.

16. Brown is a woman and 41 years old, placing her in protected classes for sex/gender and age.

17. As a result of suffering from bipolar disorder, anxiety, depression, and ADD, Brown is and was considered disabled within the meaning of R.C. § 4112.01(A)(13) and the ADA.

18. In the alternative, Bob Evans perceived Brown as being disabled.

19. In the alternative, the Bob Evans perceived that Brown's medical condition constituted a physical impairment.

20. In the alternative, Bob Evans perceived Brown's disability to substantially impair one or more of her major life activities, including working.

21. Despite this actual or perceived disabling condition, Brown was still able to perform the essential functions of her job.

22. From the beginning of her career, Brown faced rudeness and a hostile attitude from general manager Defendant Jerry Abrams (male), such as ignoring Brown when she greeted him or if she asked for help.

23. Beginning in 2021, Brown started experiencing more serious harassment from Abrams.

24. On one occasion, when Brown went to Abrams's office to discuss some issues, Abrams rudely yelled at Brown to "step back" out of the office and verbally harassed her.

25. Abrams did not yell at younger, male, and/or abled employees in this manner.

26. In Spring 2021, Brown told district manager Bryan Long (male) that she was interested in the position of shift lead.

27. After a few weeks, Brown followed up with Abrams for a timeline on the promotion, but Abrams gave her a vague answer and brushed her off.

28. After waiting for a month, Brown was finally informed that she would be shift lead at the Sharonville location of Bob Evans.

29. Sharonville was too far for Brown to travel, but she accepted for lack of a better option.

30. At the Sharonville location, Brown had no training on her new role.

31. Brown was left on the floor for several hours to complete the work of multiple people.

32. This aggravated Brown's anxiety.

33. Brown asked for help from the office multiple times, without any response.

34. About one month into her new position, Brown became overwhelmed and had to walk out for a day.

35. Brown gave shift lead Kendall LNU notice of her disabilities, notice of her leaving, and ended up being forced to formally resign for the first time.

36. Brown was not informed of her FMLA rights at this time.

37. Brown then returned to work around July 2021.

38. Around January 2022, the Glenway location began hiring shift leads and Brown expressed her interest.

39. After this, Brown was serving tables and ringing in a table's order.

40. Before Brown could ring up the drinks, Abrams began yelling at her in front of the customers accusing her of deliberately not putting them in to help the customers steal from the company.

41. Brown denied the accusation and continued with her work, but Abrams followed her around the restaurant yelling at her.

42. Brown eventually had to apologize to prevent the situation from escalating.

43. Abrams did not treat younger, male, or abled employees like this.

44. Brown reported this behavior to, director of human resources ("HR") April LNU, and HR generalist Shantelle LNU multiple times, which were protected complaints of discrimination, but no measures were taken to rectify the situation.

45. Immediately after, in late February/early March 2022, Abrams took away Brown's double shifts. This was an adverse action against her in retaliation against her previous protected complaints.

46. On or around March 15, 2022, Brown was carrying many plates and injured her back to the point that she could barely walk.

47. Brown reported this to assistant manager Kami LNU, who told Abrams, constituting Bob Evans's notice of Brown's Worker's Compensation injury.

48. Around this time, Brown also found out Abrams chose CeCe LNU, an employee in her late teens/early twenties, for the shift lead role over Brown.

49. On or around March 19, Brown was feeling unwell due to a new prescription she started taking.

50. Brown sat down for a few minutes when she could, and during one of these breaks, Abrams came up to her.

51. Abrams asked Brown if she was feeling ok, and when she said no, he accused her of being drunk at work.

5

52. Abrams thus perceived Brown as disabled.

53. Brown explained she was feeling sluggish because of her medicine, but Abrams ignored her and had the host stop serving customers in her section.

54. This directly interfered with Brown's ability to complete her essential job functions.

55. Brown went to talk to Abrams a second time to explain but was told to "get out before things got ugly."

56. Brown left and was forced to take a BAC and drug test if she wanted to return.

57. Brown took the test and passed.

58. On or around March 20, 2022, Long came to the store to discuss what happened.

59. Brown reported to Long all the harassment she had been facing. This was another set of protected complaints.

60. However, Long told Brown that Abrams was allowed to harass her and refused to see the BAC and drug test results.

61. The meeting ended with Brown completing a written incident report and Long making an empty promise to investigate.

62. Abrams had previously caused trouble for employees before, such as by getting into a fistfight with a dishwasher earlier, and multiple female managers leaving the job citing him as the reason (Sheila LNU, Jasmine Cortez, Tessa Bachelor).

63. Because of this repeated pattern of harassment and Bob Evans's failure to take action, Brown, like any reasonable person, felt she had no choice but to quit.

64. Brown resigned on or around March 23, 2022.

65. The above facts demonstrate that Defendants engaged in a pattern and practice of age, sex/gender, and disability discrimination.

66. The above facts demonstrate that Defendants engaged in a pattern and practice of unlawful retaliation.

67. There was a causal connection between Brown's age, sex/gender, and disability and Defendants' constructive termination of Brown.

68. There was a causal connection between Brown's disability discrimination complaint and Defendants' constructive termination of Brown.

69. As a result of Bob Evans acts and omissions, Brown has suffered, and will continue to suffer, damages.

## COUNT I: CONSTRUCTIVE TERMINATION IN VIOLATION OF PUBLIC POLICY
### (Defendant Bob Evans Only)

70. Brown restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

71. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating an employee to avoid a Workers' Compensation claim.

72. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because he/she engages in protected activity under Ohio law.

73. Specifically, in Sutton v. Tomco Machine, the Ohio Supreme Court noted "we recognize a common-law tort claim for wrongful discharge in violation of public policy when an injured employee suffers retaliatory employment action after an injury but before he or she files, institutes, or pursues a workers' compensation claim." (*Sutton v. Tomco Machine*, 129 Ohio.St. 3d 153, 163 (2011)).

7

74. On or around March 15, 2022, Brown was carrying many plates and injured her back to the point she couldn't walk.

75. During her employment with Bob Evans, Brown was subjected to offensive and harassing conduct based on her workplace injury from her supervisors.

76. Defendant knew or should have known of the offensive, harassing conduct against Brown.

77. Defendant condoned, tolerated, and ratified this offensive, harassing conduct.

78. This offensive, harassing conduct was severe and/or pervasive.

79. This offensive, harassing conduct was offensive to Brown.

80. This offensive, harassing conduct would also be offensive to any reasonable person.

81. This offensive, harassing conduct interfered with Brown's ability to perform her job duties.

82. This offensive, harassing conduct was based on Brown's gender.

83. This offensive, harassing conduct was so severe and pervasive that it materially altered the conditions of Brown's employment.

84. Any reasonable person in Brown's place would also have no choice but to resign due to the conduct.

85. Defendant treated Brown differently than other similarly-situated employees based on her workplace injury.

86. Brown, with no other reasonable choice, was then forced to resign her employment on or around March 23, 2022.

87. Brown's resignation was a constructive termination, an adverse employment action.

88. Defendant constructively terminated Brown's employment.

89. Defendant forced Brown to resign based on her workplace injury.

90. Defendant's constructive termination of Brown jeopardizes these public policies.

91. Defendant's constructive termination of Brown was motivated by conduct related to these public policies.

92. Defendant had no overriding business justification for constructively terminating Brown.

93. As a direct and proximate result of Defendant's conduct, Brown has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages

## COUNT II: CONSTRUCTIVE TERMINATION IN VIOLATION OF PUBLIC POLICY
### (Defendant Bob Evans Only)

94. Brown restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

95. A clear public policy exists and is manifested in R.C. § 4101.11 stating that "[e]very employer shall furnish employment which is safe for the employees engaged therein," and "[n]o employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe…"

96. The Ohio Supreme Court recognized that Ohio allows an individual to seek a public policy claim if she is terminated in retaliation for reporting to her employer that she is forced to work in an unsafe work environment. Greeley v. Miami Valley Maintenance Contrs., Inc., (1990), 49 Ohio St.3d 228. See also Pytlinski v. Brocar Products, Inc., 94 Ohio St.3d 77 (Ohio 2011); Jenkins v. Cent. Transp., Inc., No. 09CV525, 2010 WL 420027 (N.D. Ohio Jan. 29, 2010).

97. A clear public policy exists and is manifested in Ohio statutes, and/or administrative regulations, or in the common law, against terminating an employee based on her complaints of dangerous, unsafe, or illegal activity.

98. Brown sustained an injury on the job, showing that the work environment at Bob Evans was unsafe and could lead to injury.

9

99. Further, Brown was forced to do the jobs of multiple people alone and spread thin to the point that it aggravated her disabilities and she needed to take time off.

100. This shows the unsafe environment Brown needed to work in.

101. During her employment with Bob Evans, Brown was subjected to offensive and harassing conduct based on her complaints of workplace safety from her supervisors.

102. Defendant knew or should have known of the offensive, harassing conduct against Brown.

103. Defendant condoned, tolerated, and ratified this offensive, harassing conduct.

104. This offensive, harassing conduct was severe and/or pervasive.

105. This offensive, harassing conduct was offensive to Brown.

106. This offensive, harassing conduct would also be offensive to any reasonable person.

107. This offensive, harassing conduct interfered with Brown's ability to perform her job duties.

108. This offensive, harassing conduct was based on Brown's complaints of workplace safety.

109. This offensive, harassing conduct was so severe and pervasive that it materially altered the conditions of Brown's employment.

110. Any reasonable person in Brown's place would also have no choice but to resign due to the conduct.

111. Defendant treated Brown differently than other similarly-situated employees based on her complaints of workplace safety.

112. Brown, with no other reasonable choice, was then forced to resign her employment on or around March 23, 2022.

113. Brown's resignation was a constructive termination, an adverse employment action.

114. Defendant constructively terminated Brown's employment.

115. Defendant forced Brown to resign based on her complaints of workplace safety.

116. Defendant's constructive termination of Brown jeopardizes these public policies.

117. Defendant's constructive termination of Brown was motivated by conduct related to these public policies.

118. Defendant had no overriding business justification for constructively terminating Brown.

119. As a direct and proximate result of Defendant's conduct, Brown has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages

### COUNT III: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS
### (Defendant Bob Evans Only)

120. Brown restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

121. Pursuant to 29 U.S.C. § 2601 et seq., covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

122. Bob Evans is a covered employer under the FMLA.

123. During her employment, Brown qualified for FMLA leave.

124. During her employment, Brown told Bob Evans, by and through Kendall LNU, about her bipolar disorder, anxiety, depression, and ADD.

125. Brown's comment placed Bob Evans on notice of Brown's need and qualification for FMLA leave.

126. Defendant failed to properly advise Brown of her rights under the FMLA, despite its affirmative duty to do so.

127. Brown was forced to resign for a period of time to care for her health, not knowing her FMLA rights.

11

128. Defendant unlawfully interfered with Brown's exercise of her rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

129. As a direct and proximate result of Defendant's conduct, Brown is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorney's fees.

## DEMAND FOR RELIEF

WHEREFORE, Brown demands from Defendants the following:

a) Issue a permanent injunction:

   i. Requiring Defendants to abolish discrimination, harassment, and retaliation;

   ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

   iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

   iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

   v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendants to expunge Brown's personnel file of all negative documentation;

c) An award against each Defendants for compensatory and monetary damages to compensate Brown for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendants in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Brown's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

   /s/ Evan R. McFarland
Evan R. McFarland (0096953)
Matthew G. Bruce (0083769)
        Trial Attorney
Brianna R. Carden (0097961)
**THE SPITZ LAW FIRM, LLC**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax:    (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com
Email: Brianna.Carden@SpitzLawFirm.com

Attorneys for Plaintiff Lisa Brown

13

## JURY DEMAND

Plaintiff Lisa Brown demands a trial by jury by the maximum number of jurors permitted.

                                                                               /s/ Evan R. McFarland
                                                                      Evan R. McFarland (0096953)